[L. A. No. 6029. Department One.—November 12, 1920.]

M. RUDNECK et al., Copartners, etc., Respondents, v. SOUTHERN CALIFORNIA METAL & RUBBER COMPANY (a Corporation), Appellant.

[1] CONTRACT—SALE OF PILE OF MACHINE-SHOP REFUSE—LETTERS—SUBJECT MATTER OF CONTRACT.—In this action for the price of a pile of machine-shop refuse, the contract, as expressed in an exchange of letters confirming the agreement, is held to have been

one for the sale of a certain pile of borings and turnings and not one for an unidentified quantity.

[2] ID.—LOADING OF MATERIAL NOT FROM PILE—IMMATERIALITY.—In such action, in view of the absence of any doubt as to what the contract as expressed in the letters really was, the fact that two or three cars were loaded with material not from the pile was immaterial on the question as to what the contract was.

[3] ID.—MISTAKE AS TO NATURE OF MATERIAL—WHEN INSUFFICIENT GROUND OF REJECTION.—Where a purchaser of a pile of machine-shop refuse examined it before its purchase and was fully informed as to the nature of material in it, there was no mistake on his part as to the nature of the material, and he cannot lawfully reject deliveries from the pile on the ground that the contract designates it as a pile of "turnings and borings" when in fact it was not.

[4] PARTNERSHIP — FICTITIOUS NAME — COMPLIANCE WITH CODE REQUIREMENTS—PLEADING—TENDER OF ISSUE.—In an action by a partnership doing business under a fictitious name, where the complaint counts on a partnership contract and alleges compliance with the requirements of sections 2466 and 2468 of the Civil Code, an issue is tendered on the fact of publication of the certificate of partnership, and a plea in abatement is not necessary.

[5] ID.—FINDING WITHOUT EVIDENCE — WHEN JUSTIFIED.—In such an action, a finding on the issue of the publication of the certificate of partnership in plaintiff's favor without evidence can be upheld only in case the burden does not rest upon the plaintiffs to prove the affirmative of the issue.

[6] ID.—COMPLIANCE WITH CODE—BURDEN OF PROOF.—In an action by a partnership doing business under a fictitious name to recover on a partnership contract, the plaintiffs have the burden of proving compliance with sections 2466 and 2468 of the Civil Code.

[7] ID.—NEW TRIAL—ISSUE OF PUBLICATION OF CERTIFICATE.—In an action by a partnership doing business under a fictitious name to recover on a partnership contract, where all the issues except that as to the publication of the certificate of partnership have been properly determined, it is not necessary that there be a new trial except as to such issue.

[8] ID.—FAILURE TO PUBLISH CERTIFICATE—MATTER OF ABATEMENT.—The fact that publication of the certificate of a partnership doing business under a fictitious name has not been made is but a matter of abatement.

[9] ID.—COMPLIANCE PRIOR TO TRIAL SUFFICIENT.—In an action by a partnership doing business under a fictitious name to recover on a partnership contract, it is sufficient if there be a compliance with the requirements of sections 2466 and 2468 of the Civil Code before trial upon the issue.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

Hollzer & Greenberg for Appellant.

Kaye & Siemon for Respondents.

OLNEY, J.—This is an appeal by the defendant from a judgment against it for the purchase price of certain materials found to have been delivered to it under a contract of purchase from the plaintiffs and for which it failed to pay. That a contract was made, that certain materials were delivered under it, and that the defendant refused to pay therefor are admitted. The substantial defense was that the materials delivered were not of the character called for by the contract. The facts are:

The plaintiffs are engaged in the junk business in Kern County, and were the owners of a pile of machine-shop refuse at the town of Taft. The pile, to some extent at least, was made up of "borings and turnings," borings being the metal sawdust, so to speak, made in drilling into a metal, in this case iron or steel, and turnings being the metal shavings made in turning a metal upon a lathe. The defendant desired iron refuse for the purpose of supplying it to copper or other smelters, which apparently use it in reducing their ores. For this purpose the defendant inspected the plaintiff's pile of refuse, and, according to the testimony on behalf of the plaintiffs, which was accepted by the court, agreed to buy it. The agreement was confirmed by an exchange of letters reading as follows:

"Dec. 4th, 1917.

"Western Junk Company,
    "Bakersfield, Calif.
"Gentlemen:

"As per agreement made with your Mr. Morris Rudnick you have sold us say 150 to 200 tons, more or less, of Borings and Turnings at $8.50 ton, f. o. b. Taft, railroad weights to govern.

"Same to be loaded in gondolas not less than 30-ton minimum.   Shipping instructions to be furnished by us.

"Kindly confirm the same by letter.

"Please try and load as clean a stock as you can.

"Yours very truly,

"So. CAL. METAL & RUBBER CO.

"By M. TANNENBAUM.

"MT/SO."

"Dec. 5th, 1917.

"Southern Cal. Metal & Rubber Co.,

"Los Angeles, Cal.

"Gentlemen:

"Your letter recd. asking us to give conformation as per agreement which we have regarding 150 to 200 tons of Borings and Turnings, more or less.   I would be glad to do it *but as you seen the pile, possibly we may not be able to get it all out, but as far as I am concerned you get every pound that is their.*   I start to load a car from Bakersfield Sat. morning and would like to know if it is possible for me to put in this car Auto fenders and Bicycle frames and other material like that in car with Borings.   Regards to tin cans and other stuff like that from dumps I should judge I can get several hundred tons, but before going farther would like to know what I'll get for it F. O. B. Taft or Bakersfield, and how it is to be packed, let me know by return mail.   Kindly send shipping instructions at once as I start to load Sat. morning.

"Very truly yours,

"WESTERN JUNK CO.

"By M. RUDNECK.

"Per MCH."

Following the making of the arrangement, the plaintiffs loaded nine cars, pursuant to shipping instructions from the defendant, and of these three were received and paid for without objection then or thereafter as to the character of their contents, and no claim is made on either side with reference to them.   Their only bearing on the case arises from the fact that at least two, if not all three, were not loaded with material from the pile in question, and that this would seem to support to some extent the contention of the defendant that its contract was not to purchase a specified thing, the pile, but to purchase articles or materials by description,

as "borings and turnings." The remaining six cars were actually loaded from the pile, and on arriving at their destinations were rejected, the defendant claiming that they were not "borings and turnings" but chiefly slag and sand. The trial court found that this claim was not true and also that the defendant prior to purchasing had inspected the pile and knew the real nature of the material in it, and in effect that the rejected material was just what the defendant expected to get when it made the contract. These findings go to the essential merits of the case, and upon them the trial court gave judgment for the plaintiffs.

[1] The first point made on appeal by the defendant is that the two letters exchanged between the parties constitute a written contract, that the contract as expressed in them is for "borings and turnings," and not for a specific thing, the pile of material at Taft, and that the evidence of the plaintiffs that the latter was the subject matter of the contract was evidence varying the terms of a written contract and should not have been admitted and should not be considered, although admitted. We need not consider whether or not the two letters constituted a written memorial of the arrangement between the parties such as would under the so-called parol evidence rule, preclude the introduction or consideration of evidence of further additional terms. A sufficient answer to defendant's contention is that the contract, even as expressed in the letters, is not one for a quantity of unidentified borings and turnings as appellant claims, but for a certain pile of borings and turnings. The two letters are to be read together, and the plaintiffs' letter in reply to the defendant's refers to the pile, and states in effect that the plaintiffs' obligation is limited to as much of it as they can get out, but the defendant is to have all they can get. This is a clear specification of the pile as the subject of the sale. [2] The evidence to which the defendant objected was evidence merely to the same effect, and, whether properly admissible or not, could not have affected the result. This conclusion is not affected by the fact already adverted to that two or possibly three cars were loaded with material not from the pile. This fact would be of decided importance if there were any doubt as to what the contract as expressed in the letters really was. But there can be none, and this being so, the fact mentioned is immaterial.

The contract, then, was one for a certain pile of "borings and turnings." The court found that the rejected material came from the pile, and it is not contended that this finding is not supported by the evidence. It would not, however, necessarily follow that the defendant was bound to accept and pay for the material. The description of the pile as one of borings and turnings would indicate pretty strongly what the parties, or at least the defendant, believed the nature of the pile to be, and if it did so believe and it turned out that its real nature was not that, there was a substantial mistake such as would vitiate the contract and justify the defendant in refusing to accept deliveries under it. On the other hand, if it appeared, in spite of the description given the pile, that the defendant at the time it contracted to purchase it knew what its real nature was, then there was no mistake, the material delivered was just that which the defendant when it made the contract believed it was purchasing, and there was no justification for the defendant refusing to accept it. Under these circumstances, it would make no difference how the pile was described, whether as one of borings and turnings or of something else. The description is material only as showing a mistake, and it would appear that in spite of the incorrectness of the description there was no real mistake.

[3] It follows, then, that since the material rejected came from the pile sold, the defendant can justify its rejection only on the ground of a mistake as to the nature of the pile. Such mistake is negatived by two findings of the court. The first is that "it is not true that the material so shipped and consigned by plaintiffs did not consist of borings; and it is not true that 627,160 pounds thereof, or any other substantial quantity, consisted of slag or sand or other worthless material." The second is that the defendant at the time it made the contract of purchase had examined the pile, and was fully informed as to the real nature of the material in it, so that what was delivered to the defendant was just what it contracted for. It is evident that if either one of these findings is sustained by the evidence, there was no mistake, and the defendant was not justified in its rejections.

The defendant's counsel contend vigorously that the evidence does not sustain the first finding. It is quite doubtful if this contention is sound, but we need not pause to discuss it. The second finding is not attacked in the briefs or in

the argument, although the bill of exceptions does specify that it is not supported by the evidence. In any case the evidence is ample to justify it. That the defendant's agent inspected the pile before purchasing is admitted. Of course, such inspection would not necessarily be final, and if it appeared, as it did in *Abel* v. *Murphy,* 94 App. Div. 544, [88 N. Y. Supp. 256], that in spite of the inspection there was a substantial mistake as to the nature of the thing purchased, the contract could be avoided. But there is nothing to show that in this case the inspection which the defendant made failed to reveal the real nature of the pile. In fact, the fair conclusion from the evidence is that the character of the pile was such that an inspection of it would necessarily reveal the nature of the material of which it was composed. Apparently the material was all about alike and its character plainly evident. The real contention of the defendant's counsel upon the merits would seem to be that the sale was one by description. But the sale was not that, either, according to the letters upon which counsel rely, or according to the other evidence in the case. The sale not being such, but one of a certain pile of material, the finding of the court that the defendant knew when it purchased what the real nature of the pile was, is decisive of the case upon its merits.

There is a point, however, beside the merits, which requires a reversal of the judgment. The plaintiffs were doing business as copartners under a fictitious name. As such, they were required by the code (secs. 2466 and 2468, Civ. Code) to file with the county clerk of the county of their principal place of business a certificate of partnership, and to publish the same for four weeks, in order to entitle them to maintain an action upon a partnership contract. The complaint in this case counted on a partnership contract, showed that the plaintiffs were partners, doing business under a fictitious name, and alleged compliance with both the code requirements. The allegation as to such compliance was denied by the defendant's answer, and upon the pleadings in this state the parties went to trial. At the trial the plaintiffs proved the filing of the partnership certificate, but introduced no evidence whatever of its publication. The court found that such publication was made, but the finding is without support, and objection to it upon this ground is made in the bill of exceptions and in the briefs. The an-

swer which plaintiffs' counsel make is that the point was, in effect, waived at the trial, and that the failure to make the required publication was a defense which should have been presented by way of a plea of abatement. As to the waiver, suffice it to say that we find nothing to justify the claim that it occurred. [4] As to the contention that the point should have been presented by a plea in abatement, the answer is that when the plaintiffs affirmatively pleaded the fact of publication, they tendered an issue upon the point and the denial by the defendant accepted the issue. The issue was therefore in the case, and this is enough.

[5] The issue being in the case, and the court finding upon it in the plaintiffs' favor without evidence, the finding can be upheld only in case the burden did not rest upon the plaintiffs to prove the affirmative of the issue. The real question is, Did the plaintiffs have such burden? [6] This question was flatly presented in *Sweeny* v. *Stanford*, 67 Cal. 635, [8 Pac. 444], and a judgment in favor of the plaintiffs, who were copartners, was reversed because they had not proven the filing of their certificate of partnership. The case cannot be distinguished from the present, and it has been referred to by this court a number of times (see *Phillips* v. *Goldtree*, 74 Cal. 151, [13 Pac. 313, 15 Pac. 451]; *Alaska etc. Co.* v. *Standard etc. Co.*, 158 Cal. 567, 577, [112 Pac. 454]; *Holden* v. *Mensinger*, 175 Cal. 300, [165 Pac. 950]), and upon this particular point, the only one really decided by it, it has not been overruled, either expressly or by implication, and we are not prepared to do so now. Its authority is controlling, and necessitates a reversal of the judgment.

[7] It is not, however, necessary that there be a new trial as to any issue, except this single one as to the publication of the plaintiffs' certificate of partnership. All the other issues have been properly determined and there is no occasion for retrying them. (*Collins* v. *Ramish*, 182 Cal. 539, [188 Pac. 550].) For the purposes of the new trial, we deem it well to say that if it appear that the plaintiffs have at that time had publication made as required by the code, it will be sufficient to warrant judgment in their favor, whether the publication be before or after the commencement of the action. [8] The fact, if it be the fact, that publication has not been made, it but a matter of abatement. This is

now settled, although upon this point the language of *Sweeny* v. *Stanford*, just referred to, might seem to justify a different view. (*Phillips* v. *Goldtree*, 74 Cal. 151, [13 Pac. 313, 15 Pac. 451]; *Ontario Bank* v. *Tibbets*, 80 Cal. 68, [22 Pac. 66]; *California etc. Society* v. *Harris*, 111 Cal. 133 [43 Pac. 525]; *Ward etc. Co.* v. *Mapes*, 147 Cal. 752, [82 Pac. 426].) The rule is also settled that it is not necessary that the plaintiffs have complied with the statute at the time of the commencement of the action; that it is sufficient if they have done so at the time at least when issue as to the matter of abatement is made. (*California etc. Society* v. *Harris, supra; Ward etc. Co.* v. *Mapes, supra; Roulard* v. *Gray,* 38 Cal. App. 79 [175 Pac. 479].) **[9]** We have no hesitation in extending this rule so as to make it sufficient if there be a compliance with the statute before trial upon the issue. It is well settled that a plea by way of abatement of another action pending will be avoided by proof that the other action is no longer pending at the time of trial, although it may have been pending when the plea was made. (*Collins* v. *Ramish, supra,* and authorities there cited.) The reasoning of the decisions we have cited, beginning with *California etc. Society* v. *Harris,* holding that in such a case as the present a compliance with the statute is sufficient if accomplished before objection is made, proceeds upon the analogy between such a defense and one of another action pending. We see no reason for not following the analogy throughout and holding that in the case of one, as well as in that of the other, the defense fails if it appear at the time of the trial that the matter of abatement no longer exists. In fact, it would seem difficult to reconcile *First Nat. Bank* v. *Henderson,* 101 Cal. 307, [35 Pac. 899], with any other view. In that case a judgment in favor of a banking corporation, as plaintiff, had been given, and an appeal was taken on the ground that the defendant had pleaded and proved that the plaintiff had not filed with the county recorder certain statements which it was required by statute to file as a condition of its right to maintain an action. Pending the appeal, the statute imposing the condition was repealed, and this being made to appear to the supreme court, it was held that the ground of defense was removed and the judgment for the plaintiff was affirmed, although the fact that the plaintiff had not complied with the statute plainly appeared. If the removal of the

ground of such a defense after judgment is sufficient to justify a disregarding of the defense upon appeal, we can see no reason for not disregarding a very similar defense in the present action, if at the time of trial it appears that the ground for it no longer exists.

Judgment reversed for a new trial, in accordance with this opinion, upon the single issue as to publication by the plaintiffs of their certificate of partnership, as required by law, with directions that if such issue be determined in favor of the plaintiffs, judgment be given for them in accordance with the findings upon the other issues of the cause, and that if such issue be found against the plaintiffs, the action be dismissed without prejudice. It is also ordered that appellant recover its costs on appeal from the respondents.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.

All the Justices concurred.